UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.:

THE TICKTIN LAW GROUP, PLLC,

        Plaintiff,

v.

WINDSTREAM COMMUNICATIONS, LLC.,

        Defendant.
_____/

## COMPLAINT

The Plaintiff, THE TICKTIN LAW GROUP, PLLC (hereinafter referred to as "TTLG"), a Florida professional limited liability company, by and through its undersigned attorneys, hereby brings suit against the Defendant, WINDSTREAM COMMUNICATIONS, LLC (hereinafter referred to as "WINDSTREAM"), an Arkansas limited liability company and alleges:

### Jurisdictional and Venue Allegations

1. TTLG is a Florida professional limited liability company with its principal place of business in Deerfield Beach, Florida. As a Florida PLLC, TTLG is subject to the jurisdiction of this Court pursuant to section 48.193(1)(a), Florida Statutes.

2. WINDSTREAM is a foreign limited liability company, which is authorized to do business in the State of Florida with its principal place of business in Little Rock, Arkansas. WINDSTREAM is subject to the jurisdiction of this Court pursuant to section 28 U.S.C. § 1332.

3. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because: (1) there is complete diversity of citizenship between the Plaintiff and Defendant; and (2) this is a civil action in which the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Florida or the service provided by the Defendant that is the subject of the action was provided at a property situated in the Southern District of Florida.

5. All conditions precedent have been completed or waived.

## Factual Background

6. This is a case about a phone service provider, WINDSTREAM that acted negligently, as well as breached its contract with its law firm customer.

7. TTLG is a civil litigation law firm, which runs a high call volume business. Moreover, at all relevant times, it had a substantial budget for television, internet, radio, and other advertising.

8. In the month of October 2008, TTLG, entered into contract with WINDSTREAM, a phone service provider, for bundled Telecommunications services. Following that 3 year contract, the contract was subsequently renewed by successive 3 year contracts. A copy of the most recent Contract is attached hereto and marked as Exhibit "A."

9. Toward the end of 2014, TTLG began experiencing serious problems with its telephone system, including, but not limited to, large amounts of dropped calls, and the inability of the phone service to maintain connections for incoming voice calls.

10. Specifically, incoming callers to TTLG would hear the phone ring once, then a sound which was like one would expect when someone picks up the phone, which was then followed by a sound as though someone literally hung up the phone. The call was then disconnected. The sounds and the disconnection made it appear as though someone at TTLG picked up the phone call, and hung up on the caller.

11. TTLG had previously entered into a contract with Teleco, Inc. (hereinafter referred to as "Teleco") for the purchase, installation, programming, and repair to its telephone software, and equipment.

12. When the disconnection problem occurred, TTLG requested Teleco to examine the system and fix it. As a result, in or about February of 2015, Teleco contacted WINDSTREAM regarding the disconnection problem. At that time, WINDSTREAM was notified of the problems experienced by the customers and callers to TTLG. TTLG simultaneously requested maintenance and repair service as promised under the Contract.

13. At that time, WINDSTREAM explained that it examined their systems and asserted that there was no problem on its end, claiming that it must be either TTLG's equipment or the way that it was programmed. WINDSTREAM made it clear that it could not fix it the disconnection problems on its end.

14. After a month of testing different remedies, Teleco installed a new NEC SV9100S System in the TTLG offices, replacing the previous phone equipment and the Computer Processing Unit.

15. This cost TTLG Thousands of dollars to replace the phone equipment, but TTLG had no other choice as WINDSTREAM was refusing to fix the problem, and TTLG needed to have a phone system that worked.

16. On May 28, 2015, Teleco had a vendor meeting scheduled with WINDSTREAM, in order to communicate and trouble-shoot the problem, but this was canceled by WINDSTREAM.

17. On June 6, 2015 Teleco requested a Class A Inspection with WINDSTREAM, but again WINDSTREAM cancelled.

18. After several months of the phones not working, with Teleco exchanging systems, dealing with the problem in every way it could imagine, TTLG was left with a faulty phone system, which was causing it to lose substantial sums of money.

19. Moreover, TTLG was losing potential business from the television viewers calling in from the ad, and having their phone calls dropped.

20. Furthermore, numerous TTLG clients complained about the phone system not working, as the clients were not able to contact their respective lawyers to discuss their cases. Opposing counsels also complained regarding the inability to get through to TTLG's lawyers to discuss their respective cases.

21. Finally, after months of Teleco trouble-shooting, installing new phone equipment, with no assistance by WINDSTREAM, Teleco was finally able to get a response in order to fix the problem.

22. Teleco was able to get in contact with an employee of WINDSTREAM, a Mr. Matthew Davis, who admitted to WINDSTREAM's improper analysis of the problem, and

4

attributed the issues related to the inbound calls to WINDSTREAM's inability to flip the appropriate switch to operate the servicing software. Specifically, WINDSTREAM needed to pick the correct option in a drop down menu in their system, in order to fix the problem.

23. Between February 25, 2015, and October 15, 2015, Teleco invoiced TTLG for the repair, labor time, and all expenses related to troubleshooting the phone system. The total amount of services conducted by Teleco over this period totaled more than $120,000. Copies of the Invoices for this period are attached hereto and incorporated herein as Composite Exhibit "B."

24. Teleco spent substantial amounts of time investigating the cause of the problem, with repeated assurances by WINDSTREAM that the problem was not on their end, and that they could not fix the problem. As a result Teleco charged TTLG over a hundred thousand dollars to repair the issue, while all the time the problem could have simply been fixed by WINDSTREAM flipping a switch and/or fixing the problem on their own end.

25. The problems experienced by TTLG's customers spanned for a period of approximately six (6) months, and WINDSTREAM did not provide repair service for the issues related to the inbound calls.

26. In the year 2015, TTLG spent a tremendous amount of money on television, print, internet, billboard, and radio advertisement, all in an effort to increase the phone calls from potential new clients.

27. During this time period, WINDSTREAM was the phone service provider for TTLG, and was responsible for making sure that the phone lines were acting properly, so that

TTLG could run its business operations, and receive calls from potential clients responding to the ads.

28. While the ad was running, and it was crucial that the phone system was working properly, WINDSTREAM failed to deliver a functional telephone service, as bargained for and agreed to between the phone service provider and TTLG.

29. TTLG's clientele also was affected by the actions of WINDSTREAM, as they had trouble connecting to the law firm.

30. Furthermore, the service provider conducted its business in an unfair manner when it failed to cure a defect in the services that was reasonably within its control.

31. WINDSTREAM could have fixed the problem, not causing TTLG to suffer losses, and instead did nothing, allowing TTLG, its own customer, to have to spend thousands to fix the problem.

32. This resulted in substantial loss or revenue, and the loss of potential clients, as well as the waste of advertising dollars.

33. TTLG has retained the undersigned counsel in relation to pursing the instant action.

### Count I- Breach of Contract

34. TTLG avers all of the allegations contained in Paragraphs 1 through 33 above and incorporates them in this Count by reference, as though they were fully set forth herein.

35. TTLG and WINDSTREAM entered into a contract whereby WINDSTREAM accepted TTLG's offer to pay WINDSTREAM for Telecommunications services each month.

The exact amount varied each month depending on usage. A copy of the Agreement was previously attached hereto and marked as Exhibit "A."

36. Moreover, WINDSTREAM invoiced TTLG for its services. In the Invoices from WINDSTREAM is an express incorporation of the Agreement's Terms. Copies of the invoices are attached hereto and marked as Composite Exhibit "C." The Terms express that WINDSTREAM was under an obligation to provide usable services unless circumstances rendering the services unusable were outside of its control.

37. WINDSTREAM breached the contract by failing to provide usable Telecommunications services. The phone system was inoperable, and WINDSTREAM permitted the inoperable services to continue for over 6 months, costing TTLG substantial sums of lost business revenue, owed payments to Teleco, as well as client complaints. Finally, after 6 months, WINDSTREAM fixed the problem, by realizing that it could simply change a setting on its own system.

38. WINDSTREAM had reason to know of TTLG's need to have operable phone services given TTLG's unique position as a law firm when the contract was made and had reason to foresee that TTLG would rely upon WINDSTREAM's service representatives when they insisted that the inoperable services rendered by WINDSTREAM were not the result of any act or omission by WINDSTREAM.

39. Owing to TTLG's reliance on WINDSTREAM's representation, TTLG contracted with Teleco to needlessly replace functional telecommunications equipment at a cost of about $120,000.00.

40. Due to WINDSTREAM's breach of the Contract, TTLG suffered damage, and is entitled to damages from WINDSTREAM as a result of its breach.

WHEREFORE, the Plaintiff, THE TICKTIN LAW GROUP, PLLC, respectfully requests that this Court enter a judgment against the Defendant, WINDSTREAM COMMUNICATIONS, LLC, for monetary damages in the amount of $150,000.00, plus all interest accrued, costs, reasonable attorney's fees and costs, and such other relief as this Honorable Court may deem just and proper.

### Count II- Negligence

41. TTLG avers all of the allegations contained in paragraphs 1 through 33 above and incorporates them in this Count, by reference as though they were fully set forth herein.

42. WINDSTREAM had a duty under its contract with TTLG to provide a functional telecommunications system.

43. Moreover, WINDSTREAM had a common-law duty to TTLG, as TTLG hired WINDSTREAM to provide adequate telephone services to the law firm.

44. WINDSTREAM breached that duty when it failed to properly assess the issues TTLG was experiencing with its phone system, refusing to fix the problem, and negligently claiming that the problem was not on their end.

45. WINDSTREAM acted negligently by not fixing the problem, which was on their own end in a timely manner.  Instead, WINDSTREAM negligently insisted that the problem was not on their end, causing TTLG to hire Teleco to trouble-shoot the problem, and replace its equipment.

46.     If not for WINDSTREAM's negligence in determining the root of the phone problem, TTLG would not have incurred the work and service fees from Teleco's attempt to solve the issue.

47.     The actions of WINDSTREAM were not what a reasonably prudent company would have done, in a similar circumstance.

48.     Due to WINDSTREAM's negligence, TTLG has suffered losses.

WHEREFORE, the Plaintiff, THE TICKTIN LAW GROUP, PLLC, respectfully requests that this Court enter a judgment against the Defendant, WINDSTREAM COMMUNICATIONS, LLC, for monetary damages in the amount of $150,000.00, plus all interest accrued, costs, reasonable attorney's fees and costs, and such other relief as this Honorable Court may deem just and proper.

Respectfully submitted this **3rd day of January, 2018**

**THE TICKTIN LAW GROUP, PLLC.**
270 SW Natura Avenue
Deerfield Beach, Florida 33441-1610
Telephone: (954) 570-6757

 _/s/_ _Amanda L. Mollica_
PETER TICKTIN
Florida Bar No. 887935
JAMIE ALAN SASSON
Florida Bar No. 10802
AMANDA L. MOLLICA
Florida Bar No. 125269

Our Matter No.: 15-1333